UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
NICOLE LAWLESS,

                                                  Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

                                                Defendant.
-----------------------------------------------------------------------X

For Online Publication Only

**ORDER**
20-CV-04221 (JMA)

FILED
CLERK
11:32 am, Mar 13, 2023
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

Plaintiff Nicole Lawless ("Plaintiff") seeks review and reversal of the final decision by the Commissioner of Social Security ("Commissioner" or "Defendant"), reached after a hearing before an administrative law judge, denying her application for Social Security Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"). Before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF Nos. 17, 18.) For the following reasons, Plaintiff's motion is GRANTED, the Commissioner's cross-motion is DENIED, and the case is REMANDED for further proceedings consistent with this Order.

## I.    BACKGROUND

Plaintiff filed her application for SSI benefits on March 1, 2017, alleging a disability onset date of January 21, 1999, her date of birth. (Tr.[1] 163, 192.) She alleged disability based on the following physical impairments: Ehlers-Danlos Syndrome ("EDS")[2], "KTT tape right knee",

---

[1] Citations to "Tr." refer to the corresponding pages of the certified administrative transcript. (ECF No. 16.)

[2] EDS is a group of inherited disorders that affect connective tissues supporting the skin, joints, and blood vessel walls. See Mayo Clinic, Ehlers-Danlos syndrome, https://www.mayoclinic.org/diseases-conditions/ehlers-danlos-syndrome/symptoms-causes/syc-20362125. Symptoms include overly flexible and painful joints, and stretchy and fragile skin. Id.

Chiari malformation type 1[3], orthostatic hypotension, low blood pressure, postural orthostatic tachycardia syndrome ("POTS")[4], iron deficiency anemia, chronic pain, and multiple labral tears. (Tr. 192.)

Following the denial of her application, Plaintiff requested a hearing. (Tr. 79, 91, 106.) On February 6, 2019, Administrative Law Judge Bonnie Hannan (the "ALJ") conducted an administrative hearing, at which Plaintiff was represented by counsel. (Tr. 13.) An impartial vocational expert also testified at the hearing. (Id.)

In a decision dated April 24, 2019, the ALJ denied Plaintiff's claim. (Tr. 10–30 (the "Decision").) The ALJ followed the five-step analysis pursuant to 20 C.F.R. § 404.1520. First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. (Tr. 15–16.) Second, the ALJ found that Plaintiff had demonstrated the following severe impairments: EDS, POTS, gastroparesis, anemia, Chiari malformation type 2, and headaches. (Tr. 16.) Third, the ALJ decided that these impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16–17.) Fourth, the ALJ found that Plaintiff had the residual functioning capacity ("RFC") to perform "less than the full range of light work as defined in 20 CFR 416.967(b)." (Tr. 17.) Specifically, the ALJ determined that

> the claimant can occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds. She can sit for six hours total in an eight-hour workday and stand and/or walk for six hours total in an eight-hour workday. Further, the claimant

---

[3]   Chiari malformation is a condition in which brain tissue extends into the spinal canal. See Mayo Clinic, Chiari malformation, https://www.mayoclinic.org/diseases-conditions/chiari-malformation/symptoms-causes/syc-20354010. It occurs when part of the skull is abnormally small or misshapen, pressing on the brain and forcing it downward. Id. Headaches, "often severe, are the classic symptom of Chiari malformation." Id.

[4]   POTS is a condition that causes the heart to beat faster than normal during the transition from a sitting or lying position to a standing position. See Cleveland Clinic, Postural Orthostatic Tachycardia Syndrome (POTS), https://my.clevelandclinic.org/health/diseases/16560-postural-orthostatic-tachycardia-syndrome-pots.

can push and pull as much as she can lift and carry. She can occasionally climb ramps and stairs. Moreover, the claimant can never climb ladders, ropes, or scaffolds. She can frequently balance. Additionally, the claimant can occasionally stoop, kneel, crouch, and crawl. She can never work at unprotected heights or with moving mechanical parts. Furthermore, the claimant can have occasional exposure to humidity, wetness, dusts, odors, fumes, and irritants. She can never be exposed to extreme cold or extreme heat. In addition, the claimant can be exposed to occasional vibration and moderate noise. She can occasionally operate hand controls with the bilateral hands. Finally, the claimant can frequently, handle, and feel with the bilateral hands.

(Id.) The ALJ next found that Plaintiff had no past relevant work. (Tr. 22.) At step five, based on the vocational expert's testimony, and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff could perform the occupations of Garment Sorter, Price Marker, Routing Clerk, Document Specialist, Toy Stuffer, and Printed Circuit Board Screener. (Tr. 22–23.) Accordingly, the ALJ concluded that Plaintiff was "not disabled," as defined by the Act, from March 1, 2017, the date Plaintiff applied for SSI benefits, through the date of the Decision. (Tr. 23.)

The Decision became final on July 7, 2020, when the Appeals Council denied Plaintiff's request for review. (Tr. 1.) This appeal followed.

## II.   LEGAL STANDARDS

### A.   Standard of Review

In reviewing a denial of disability benefits by the Social Security Administration, it is not the function of the Court to review the record de novo, but to determine whether the ALJ's conclusions "are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvior v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "To determine whether the findings are supported by substantial evidence,

the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1984) (per curiam)). Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." State of New York ex rel. Bodnar v. Sec. of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). See also Shalala v. Schaefer, 509 U.S. 292, 296–97 & n.1 (1993). The "reviewing court will order remand for further proceedings when the Commissioner failed to provide a full and fair hearing, made insufficient findings, or incorrectly applied the applicable laws and regulations." Kessler v. Comm'r of Soc. Sec., No. 17-CV-4264, 2020 WL 1234199, at *5 (E.D.N.Y. Mar. 13, 2020) (citing Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999)).

**B.     Social Security Disability Standard**

Under the Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" Id. § 423(d)(2)(A).

As discussed above, the Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Within this framework, a claimant will be found disabled if the Commissioner determines:

> (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find his disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). At step four, the Commissioner determines the claimant's RFC before deciding if the claimant can continue in his prior type of work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant bears the burden at the first four steps, but at step five, the Commissioner must demonstrate that "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

### III.    DISCUSSION

Plaintiff contends that "the Commissioner's decision is not supported by substantial evidence and suffers from several legal errors," namely: (1) the RFC determination is not supported by substantial evidence and is infected by the ALJ's failure to follow the "treating physician rule"; (2) the RFC determination is "flawed" because the ALJ failed to consider Plaintiff's severe headaches; and (3) the ALJ relied on "erroneous" vocational expert testimony. (Pl.'s Mem.[5] at 6; Pl.'s Reply at 2–4.) Defendant counters that "substantial evidence supports the Commissioner's decision that Plaintiff's impairments did not preclude her from performing a

---

[5] "Pl.'s Mem." refers to "Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings." (ECF No. 17-1.) "Def.'s Mem." refers to Defendant's "Memorandum of Law in Support of the Defendant's Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings." (ECF No. 18-1.) "Pl.'s Reply" refers to "Plaintiff's Reply in Support of Plaintiff's Motion for Judgment on the Pleadings and in Opposition to the Commissioner's Cross-Motion for Judgment on the Pleadings." (ECF No. 19.)

5

reduced range of light work, and the Commissioner applied the correct legal standards." (Def.'s Mem. at 2.) As explained below, the Court agrees with Plaintiff that the ALJ did not follow the treating physician rule and that the RFC determination is not supported by substantial evidence.

A. **The ALJ Failed to Follow the Treating Physician Rule**

As Plaintiff filed her SSI application before March 27, 2017, her application is subject to the "treating physician rule." 20 C.F.R. § 404.1527(c)(2); see Colgan v. Kijakazi, 22 F.4th 353, 360 n.2 (2d Cir. 2022) ("The new regulatory regime is clear that claims filed before March 27, 2017—such as [Plaintiff]'s—are still governed by the framework and evidentiary standards set out in 20 C.F.R. § 404.1527.").

Under the treating physician rule, "the opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Estrella v. Berryhill, 925 F.3d 90, 95 (2d Cir. 2019) (alterations in original) (quoting Burgess, 537 F.3d at 128)). "Put another way, the rule requires the ALJ to defer to the treating physician's opinion when making disability determinations if the opinion is supported by reliable medical techniques and is not contradicted by other reasonable evidence in the administrative record." Colgan, 22 F.4th at 360 (citation omitted).

"[I]f the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." Estrella, 925 F.3d at 95. In conducting this analysis, the ALJ must "explicitly consider" the following, nonexclusive "Burgess factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Id. at 95–96 (alteration in original) (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)). "At both steps, the ALJ must 'give good reasons in

[its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion.'" Id. at 96 (alterations in original) (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam)). Failure to "explicitly" apply the Burgess factors when assigning weight constitutes procedural error; however, a reviewing court will affirm the Commissioner's decision when the Commissioner has given "good reasons" for its weight assignment, or when "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed[.]" Id.

Plaintiff argues that the ALJ failed to follow the treating physician rule because the Decision "does not even mention" the opinions of her treating pediatrician, Mark Kropf, M.D., (Pl.'s Mem. at 16), and because the ALJ assigned "little weight" to the opinion of her treating cardiologist, Rohan Perera, M.D., "absent consideration of the Burgess factors and 'good reasons' for not doing so." (Pl.'s Reply at 3 (citation omitted).) The Commissioner raises no argument in response. The Court agrees with Plaintiff.

First, review of the Decision reveals that the ALJ entirely omitted any mention of Dr. Kropf's medical source statements (Tr. 473, 526). Although Dr. Kropf's statements are brief, as Plaintiff's treating pediatrician, the ALJ was required to defer to his opinion when making the disability determination if the opinion was "supported by reliable medical techniques" and was "not contradicted by other reasonable evidence in the administrative record." Colgan, 22 F.4th at 360. Because the ALJ apparently assigned no weight to Dr. Kropf's statements, the onus was on the ALJ to "explicitly consider" the Burgess factors and provide "good reasons" for affording the statements no weight. See Estrella, 925 F.3d at 95–96.

Second, despite Dr. Perera's opinion that Plaintiff's "moderate" to "severe" impairments impact her ability to perform activities of daily living, ambulate, complete tasks, and attend school, (Tr. 271–72), the ALJ assigned the opinion little weight. (Tr. 21.) Indeed, the ALJ dismissed Dr.

7

Perera's opinion out of hand, asserting that "it was completed for a housing request and does not state anything in vocationally relevant terms." (Id.) However, as the Second Circuit has explained, "[c]onclusory reasons for rejecting the opinion[ ] of [a treating physician] do not provide a basis to decline to assign [the physician]'s opinion[ ] controlling weight." Byrne v. Berryhill, 752 F. App'x 96, 98 (2d Cir. 2019); see also Ferraro v. Saul, 806 F. App'x 13, 16 (2d Cir. 2020) (remanding to Commissioner where "ALJ made only [a] conclusory assessment" of treating physician's opinion before assigning it "some weight"). Here, the ALJ again failed to explicitly consider the Burgess factors or provide "good reasons" for assigning Dr. Perera's opinion little weight. Likewise, the ALJ made no attempt to consider whether Dr. Perera's opinion was "supported by reliable medical techniques," and "not contradicted by other reasonable evidence in the administrative record." Colgan, 22 F.4th at 360 (citation omitted). This, too, was error.

Moreover, after disregarding and discounting the opinions of Dr. Kropf and Dr. Perera, respectively, the ALJ was left with only the opinion of the consultative examiner, Kanista Basnayake, M.D. (Tr. 19–21, 706.) However, the ALJ assigned only "little weight" to Dr. Basnayake's opinion, finding that the opinion was "based on the claimant's subjective complaints rather than the medical evidence of record as a whole, including Dr. Basnayake's own examination of [Plaintiff]." (Tr. 20.) The ALJ also discounted Dr. Basnayake's opinion "because it is vague and offers little insight into [Plaintiff]'s residual functional capacity," and "is inconsistent with all of the activities of daily living [Plaintiff] reported she performs." (Tr. 21.) As a result, it is unclear which portions of Dr. Basnayake's opinion, if any, the ALJ credited or otherwise relied on in determining Plaintiff's RFC. In fact, even the Commissioner acknowledges that—at best—Dr. Basnayake's opinion "could be considered consistent" with the ALJ's RFC determination. (Def.'s Mem. at 18 (emphasis in original).)

8

This is plainly insufficient to support the RFC determination, as it appears that the ALJ "substituted her own judgment to interpret the raw medical data against [Plaintiff]'s testimony and treatment history." Riccobono v. Saul, 796 F. App'x 49, 50 (2d Cir. 2020). Even if the ALJ had "given appropriate reasons for not according controlling weight to some of the opinions of [Plaintiff]'s treating physicians, she must still base her conclusion on some medical opinion or otherwise articulate the overwhelmingly compelling reasons for not doing so." Id. (emphasis in original) (citation omitted). "Absent those reasons, the ALJ had an 'affirmative obligation' to 'attempt[ ] to fill any clear gaps in the administrative record' created by inconsistencies in the medical opinions—for example, by directing the physicians to 'supplement [their] findings with additional information.'" Id. (quoting Rosa, 168 F.3d at 79–80). Thus, the ALJ committed error by rejecting the physicians' opinions and thereafter failing to develop the record.

On remand, the ALJ should consider whether the opinions of Plaintiff's treating physicians are "supported by reliable medical techniques" and "not contradicted by other reasonable evidence in the administrative record." Colgan, 22 F.4th at 360. If the ALJ declines to give controlling weight to their opinions, the ALJ should explicitly weigh each of the Burgess factors discussed above. See Estrella, 925 F.3d at 95–96. Finally, the ALJ should consider whether to direct the physicians to supplement their findings with additional information. See Rosa, 168 F.3d at 79–80.

**B.     Plaintiff's Remaining Arguments**

Because the Court remands the case based on the issues discussed above, it is not necessary to rule on Plaintiff's remaining arguments that (1) the RFC determination is "flawed" because the ALJ failed to consider Plaintiff's severe headaches, and (2) the ALJ relied on "erroneous" vocational expert testimony. (Pl.'s Mem. at 6; Pl.'s Reply at 2–4.) Nevertheless, the Court will briefly address Plaintiff's first argument in order to provide additional guidance to the ALJ on remand.

Because the ALJ found that Plaintiff's headaches constitute a "severe" impairment (Tr. 16), on remand, the ALJ should "make [ ] findings regarding the limiting effects," if any, of Plaintiff's headaches, Davila v. Comm'r of Soc. Sec., No. 16-CV-4774, 2018 WL 5017748, at *22 (E.D.N.Y. Oct. 16, 2018), and explicitly incorporate those findings into the determination of Plaintiff's RFC. If the ALJ finds that Plaintiff's headaches do not result in any limitations, the ALJ should explain the basis for this conclusion.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for judgment on the pleadings, DENIES the Commissioner's cross-motion, and REMANDS this case for further proceedings consistent with this Order. The Clerk of Court is respectfully directed to enter judgment accordingly and to close this case.

**SO ORDERED.**

Dated: March 13, 2023
Central Islip, New York

/s/   (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE